# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **ADEBAYO ADEBUSOYE,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-18-153 |
| **PRINCE GEORGE'S COUNTY, MARYLAND,** | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Adebayo Adebusoye, who is from Nigeria, worked as a Correctional Officer at the Prince George's County Correctional Center. After his employment was terminated for use of excessive force, Adebusoye challenged the decision in state court, filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and ultimately filed suit in this Court pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.* Compl., ECF No. 1. Defendants Prince George's County Department of Corrections ("DOC") and its Director, Mary Lou McDonough, filed a pre-motion letter, seeking to file a motion to dismiss on *Rooker–Feldman*[1] abstention grounds or under the doctrine of collateral estoppel, based on the state court litigation affirming the DOC's decision. Defs.' Ltr., ECF No. 4. Noting that Adebusoye alleged that his termination was discriminatory and retaliatory, Defendants also asserted that, for his retaliation claim, Adebusoye failed to exhaust his administrative remedies or state a claim. *See id.*; *see also* Defs.' Supp. Ltr, ECF No. 11.

---

[1] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

Adebusoye filed an Amended Complaint to name only Prince George's County (the "County") as a Defendant;[2] to clarify the claims he brings (one for discrimination based on national origin and one for retaliation, both in violation of Title VII); and to address the other perceived deficiencies. ECF No. 15. Believing that some of the alleged defects still exist, the County filed the pending Motion to Dismiss, ECF No. 16.[3] Adebusoye failed to exhaust his administrative remedies for his retaliation claim, and it must be dismissed for lack of subject matter jurisdiction. As for the discrimination claim, dismissal is not warranted under either *Rooker–Feldman* or collateral estoppel, although Adebusoye is estopped from re-litigating the issues decided by the state court. This litigation is beyond the scope of the state court litigation, as Adebusoye now claims that the termination of his employment, even if justified by his use of excessive force, was discriminatory. Accordingly, I will grant the County's motion in part and deny it in part.

## Background

On June 20, 2011, Adebusoye, who was a Correctional Officer at the Prince George's County Correctional Center at that time, "used force to protect himself" from a detainee who "advanced towards the Plaintiff in an aggressive manner," causing Adebusoye to "fear[] for his safety" because he knew that the detained had "a history of hostile and unsafe interactions with employees of the Department." Am. Compl. ¶¶ 20–22. Following the incident, "a disciplinary proceeding was commenced against the Plaintiff . . . ." *Id.* ¶ 23. The administrative hearing board (the "Board") "ultimately found the Plaintiff guilty as charged and recommended a sanction, including (1) a demotion in rank and pay, and (2) a suspension without pay." *Id.* ¶ 24. The Director,

---

[2] The Clerk shall update the docket to reflect the proper defendant.

[3] The parties fully briefed the issues. ECF Nos. 16-2, 17, 20. A hearing is not necessary. *See* Loc. R. 105.6.

whose approval was required, instead "imposed a sanction of termination." *Id.* On February 17, 2012, the County terminated Adebusoye's employment. *Id.* ¶ 29.

Adebusoye completed an EEOC Intake Questionnaire on February 21, 2012, claiming discrimination based on race and national origin, as well as retaliation, disparate treatment, and defamation. Intake Questionnaire, ECF No. 1-2, at 3, 5. The next day, February 22, 2012, he signed and filed a formal EEOC Charge of Discrimination, narrowing his claim to discrimination based on national origin. EEOC Charge, ECF No. 1-2, at 7. He alleged: "I believe I have been discharge[d] because of my national origin (Nigerian) in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* ¶ III.

He also filed a handwritten Supplement, alleging that when his employment was terminated on February 17, 2012, a conflict arose regarding the return of his vest. ECF No. 1-2, at 9–11. According to Adebusoye, he returned his "ID card, keys, & badge" and was asked to remove his "vest, which [he] wore under [his] uniform dress," but not given privacy to remove it. *Id.* at 9. He claims that he was intimidated and threatened with arrest and forcible removal of the vest, *id.*, and although in the end he was able to remove the vest in an office with only one other officer present, he was "so embarrassed" because afterwards, a "group . . . escorted [him] out" and "the entire lobby was packed with nosy employees & visitors who could tell [he] was fired," *id.* at 10–11. Notably, he did not mention race or retaliation in the EEOC Charge or Supplement or check the box next to either basis of discrimination on the EEOC Charge. *See id.*

Adebusoye also appealed the decision to terminate his employment to the Circuit Court for Prince George's County, Maryland on February 28, 2012. Tr. 2:16–20, ECF No. 16-7; State Ct.

Docket 1, ECF No. 16-7.[4]  He did not raise discrimination or retaliation before the state court.  Rather, he asserted that the Department's collective bargaining agreement with its employees required that any disciplinary sanctions had to be either identified in the Board's disciplinary action recommendation within 120 days of the date of the incident or imposed by the Department within that timeframe.  Hr'g Tr. 3:10–11, 4:1–25.  He argued for reversal of his termination because, although the Board issued its recommendations within 120 days of the incident, termination of employment was not one of the Board's recommendations, and the Department did not terminate his employment within the 120-day period, such that its decision (in his view) was untimely.  *Id.*

The state court rejected his argument and affirmed the Board's decision.  Hr'g Tr. 21:2–3; *see id.* at 22:1–12 ("[T]he whole point of the disciplinary action recommendation is to determine whether or not these events occurred.  And that Board gets to make their recommendations and, of course, it's ultimately at the discretion of the director.  To me, this procedure is very clear.  You have to serve the notice within 120 days and then you have to have a hearing 45 days after.  In this case, he waived his right to a hearing within the 45 days.  The subsections of that [collective bargaining agreement provision] would be totally meaningless if I interpreted it any other way.  So I am going to affirm the decision of the administrative hearing court.").  The state court issued an order on August 24, 2012 that "the decision of the Prince George's County Department of Corrections is AFFIRMED."  State Ct. Docket 5.  Adebusoye appealed to the Maryland Court of Special Appeals but then dismissed his appeal on April 29, 2013.  *Id.* at 5–6.

---

[4] I may take judicial notice of these state court documents.  *See* Fed. R. Evid. 201(b)(2).

On June 29, 2017, the EEOC found that the DOC "violated Title VII with regards to discharge due to [Adebusoye's] national origin (Nigerian)." Determination, ECF No. 1-2, at 13. It issued a Notice of Right to Sue on November 24, 2017. Notice, ECF No. 1-2, at 16.

Adebusoye then filed suit in this Court on January 17, 2018, alleging that "there was a long standing and notorious animosity within the Department toward foreign born correctional officers, specifically, correctional officers of African descent," Am. Compl.. ¶ 26, and that "African born correctional officers were subject to racial slurs, derogatory language, systematic denial of promotional and employment opportunities, and severe sanctions as a result of infractions," *id.* ¶ 27. Adebusoye "made multiple Complaints to the Department [of Corrections] regarding the treatment of African born correctional officers," and "[t]hese complaints were well known and dr[e]w disfavor for the Plaintiff." *Id.* ¶ 37.

In his view, his "disciplinary proceedings were intentionally manipulated to produce the desired result; the Plaintiff's guilt." *Id.* ¶ 28. He alleges that the County "has previously adjudicated excessive use of force complaints against other correctional officers, not originating from Africa," and "[t]hose correctional officers were not subject to termination." *Id.* ¶ 30. He claims that the County's termination of his employment was an act of discrimination based on his national origin and retaliation for his complaints about the County's alleged discriminatory "treatment of African born correctional officers," in violation of Title VII. *Id.* ¶ 37; *see also id.* ¶¶ 25–45. He seeks reinstatement, back pay, and other monetary damages. *Id.* at 7–8.

### Standard of Review

The County moves to dismiss both claims for lack of jurisdiction or, alternatively, for failure to state a claim.

5

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as the County does here for failure to exhaust administrative remedies and under *Rooker-Feldman*,[5] "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013). Thus, "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see In re KBR, Inc., Burn Pit Litig.*, 925 F. Supp. 2d 752, 758 (D. Md. 2013) (quoting *Kerns*, 585 F.3d at 192). Adebusoye attached his EEOC filings to his Complaint and Amended Complaint, ECF No. 1-2, at 7; ECF No. 15-3, at 7, and such documents attached to a complaint are a part of the pleadings. *See* Fed. R. Civ. P. 10(c). Further, where allegations in the operative complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991).

Pursuant to Rule 12(b)(6), Adebusoye's Amended Complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

---

[5] *See Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013))); *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) ("Because the *Rooker–Feldman* doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis."); *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 319 (4th Cir. 2016) (noting that Congress did not "confer on district courts appellate jurisdiction over state court judgments" (emphasis removed)).

Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

The County asserts collateral estoppel as an affirmative defense. The Court may consider affirmative defenses such as collateral estoppel on motions to dismiss only when they "clearly appear[] on the face of the complaint." *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation and quotation marks omitted)). That is the case here, as Adebusoye filed suit after the circuit court issued its ruling and after he dismissed his appeal to the Maryland Court of Special Appeals, and collateral estoppel may apply when there is a final adjudication on the merits. *GAB Enters., Inc. v. Rocky Gorge Devel., LLC*, 108 A.3d 521, 530 (Md. Ct. Spec. App.), *cert. denied sub nom. Rocky Gorge Dev. v. GAB Enters.*, 114 A.3d 711 (Md. 2015). Therefore, I will consider collateral estoppel as a basis for dismissal. *See Kalos*, 2012 WL 6210117, at *2.

**Failure to Exhaust – Retaliation Claim**

To exhaust his administrative remedies for Title VII purposes, Adebusoye must "bring [] a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Adebusoye filed an EEOC Charge of Discrimination on February 22, 2012 and attached it to his Complaint and Amended Complaint.

Additionally, given that the claims that Adebusoye now brings in federal court predate the EEOC Charge, he must have raised them in the EEOC Charge. *See Hunter v. Vilsack*, No. DKC-07-2655, 2010 WL 1257997, at *8 (D. Md. Mar. 26, 2010) (quoting *Cherry v. Bealefeld*, No. CCB-08-1228, 2010 WL 917421, at *7 (D. Md. March 9, 2010)) (holding that rule from *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), and *Hill v. W. Elec. Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982)—that claims are exhausted if related to claims in an EEOC charge—does not apply if the claims "could have been raised in her EEOC charge, but were not" because a later-filed EEOC charge suggests that the plaintiff was not "reluctant to file additional charges for fear of further reprisal," and therefore the plaintiff should not be excused from exhausting administrative remedies for claims "that predate the filing of an EEOC charge"); *see also Jones*, 551 F.3d at 303.

In the EEOC Charge, Adebusoye claimed only that the termination of his employment was discriminatory, based on his national origin, in violation of Title VII. EEOC Charge ¶ III. Adebusoye does not disagree (and would have no basis for doing so). Instead, he relies on his Supplement and Intake Questionnaire, in which he also alleged retaliation. Pl.'s Opp'n 15. Certainly, "[a]n EEOC intake questionnaire may constitute a charge under certain circumstances." *Russell v. Herb Gordon Auto Grp.*, No. PWG-15-7, 2015 WL 5009993, at *2 (D. Md. Aug. 21, 2015) (citing *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008)). But these are not the circumstances, given that the Fourth Circuit has held that, when a formal charge has been filed, the court "may look only to the charge filed" with the EEOC to "determin[e] what claims a plaintiff properly alleged before the EEOC"; an "intake questionnaire . . . cannot be read as part of [a] formal discrimination charge without contravening the purposes of Title VII." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). In *Balas*, the Fourth Circuit noted that one of the "two principal purposes" of

an EEOC charge is that "'it notifies the charged party of the asserted violation,'" and therefore "the charge itself serves a vital function in the process of remedying an unlawful employment practice." *Id.* at 407 (quoting *Dickey v. Greene,* 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds,* 729 F.2d 957 (4th Cir. 1984)). The court observed:

> An employee complaining of illegal discrimination must first contact the EEOC and present it with information supporting the allegations. 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.6. **After receiving an employee's intake questionnaire and any other information the employee has provided, the EEOC typically assists the employee with filing a charge.** This assistance often includes drafting a charge—as it did here—and then asking the employee to sign it. *See* U.S. Equal Employment Opportunity Comm'n, *The Charge Handling Process,* available at http://www.eeoc.gov/employees/process.cfm (last visited Feb. 15, 2013).
> **The EEOC sends a notice and copy of the charge to the employer**. 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.14. This notice gives the employer the chance to voluntarily conduct its own investigation and attempt to resolve any discriminatory actions internally. *See Chacko* [*v. Patuxent Inst.,* 429 F.3d 505, 510 (4th Cir. 2005)]. Concurrently, the EEOC investigates the charge.

*Id.* (emphases added). Thus, Plaintiff's insistence that "[t]he *EEOC* was aware of the Plaintiff's allegations of retaliation," Pl.'s Opp'n 15 (emphasis added), misses the point, as it is the employer, not the EEOC, who must receive notice. *See Balas*, 711 F.3d at 407.

Adebusoye filed his formal EEOC Charge after his Intake Questionnaire and omitted the retaliation claim, such that the employer did not receive notice of the retaliation claim. Therefore, this Court cannot construe it as part of his EEOC Charge. *See id.* at 407–08. And, while he also filed a Supplement to the EEOC Charge, even if it were construed as a part of the Charge, it did not allege retaliation either. Therefore, this claim is unexhausted and this Court lacks the jurisdiction to consider it. *See Hunter*, 2010 WL 1257997, at *8; *Cherry*, 2010 WL 917421, at *7.

### *Rooker–Feldman* – Discrimination Claim

The *Rooker–Feldman* doctrine "holds that 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'" *Thana v. Bd. of License*

*Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 319 (4th Cir. 2016) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)). It "assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court *specifically* to review that state court judgment." *Id.* at 320. Thus, the doctrine "is to play" a "narrow role" and is "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 319, 320 (quoting *Lance*, 546 U.S. at 464 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005))). Indeed, "the Supreme Court has noted repeatedly that, since the decisions in *Rooker* and *Feldman*, it has *never* applied the doctrine to deprive a district court of subject matter jurisdiction," and, "since *Exxon*, [the Fourth Circuit has] never, in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine." *Id.* at 320.

Notably, "federal courts may still entertain claims the state court examined, so long as those claims do not challenge the state-court *decision* itself." *Lane v. Anderson*, 660 F. App'x 185, 189 (4th Cir. 2016). In *Lane*, the Baltimore City Sheriff's Office terminated Lane, a deputy sheriff, after he spoke negatively to the media about how the office handled a shooting. *Id.* at 187–88. Lane appealed his termination in state court, arguing that there was insufficient evidence of the charges for which he was termination and that "he was terminated for conduct that was both not charged and outside the record." *Id.* at 188. After the state trial court reversed, the state appellate court "considered 'only . . . the ultimate sanction imposed'" and "upheld [the] termination." *Id.*

In *Lane*, as in this case, the employee was "not challenging the Maryland court's decision or judgment, but rather the injury that [his employer] imposed, that is, [the employee's]

10

termination." *Id.* In concluding that the district court had jurisdiction, the *Lane* Court relied on *Davani v. Virginia Department of Transportation*, 434 F.3d 712, 718 (4th Cir. 2006).

> In *Davani*, a state employee challenged his termination for discrimination and retaliation, and the administrative agency upheld the termination. *See Davani*, 434 F.3d at 715. The state court dismissed his appeal, and the employee filed a complaint in federal court alleging retaliation and discrimination, which thereafter was dismissed for lack of subject matter jurisdiction pursuant to the *Rooker–Feldman* doctrine. *See id.* [The Fourth Circuit] reversed, concluding that the employee was not "seek[ing] redress for an injury caused by the state-court decision itself," *id.* at 718, but rather for the injury that the employer caused when it terminated the employee, *see id.* at 719.

*Lane*, 660 F. App'x at 189–90. The *Lane* Court observed that, "[l]ike in *Davani*, the state-court judgment here did not cause [the employee's] injury when it upheld [the employer's] decision to terminate [the employee]." *Id.* at 190. The same is true in the case before me. And, Adebusoye, like Lane, filed a complaint in this Court that did "not allege that the state court caused the injury, and instead, he allege[d] that [his employer] caused his termination, an event that happened prior to the state-court decision." *Id.* On those facts, the Fourth Circuit held that Lane's "claims [we]re not barred by *Rooker–Feldman*, and therefore, federal subject matter jurisdiction remains intact." *Id.* The circumstances are the same here, and I reach the same conclusion. *See id.*

Certainly, in *Hurdle v. Virginia Department of Environmental Quality*, 227 F. Supp. 2d 549 (E.D. Va.), *aff'd sub nom. Hurdle v. Virginia*, 53 F. App'x 256 (4th 2002), on which Defendant relies, *see* Def.'s Reply 1–2, the court found that *Rooker–Feldman* barred the claims in federal court after the state court determined that the employer's decision to terminate the employee was proper. But, *Hurdle* was an Eastern District of Virginia decision, issued well over a decade before *Lane* and affirmed by an unpublished Fourth Circuit opinion "on the reasoning of the district court," and for those reasons is not owed any deference or preferential treatment over *Lane*, a more recent (albeit also unpublished) Fourth Circuit opinion.

11

Moreover, the circumstances of *Hurdle* are inapposite because there, unlike here, the employee raised the same issues in state court and the state court decided those issues. The employee specifically claimed in state court that his employee "evaluation was arbitrary, capricious, and retaliatory and that []his termination was wrongful, unfair, and retaliatory," and he "also asserted claims of racial discrimination and disparate treatment." *Id.* at 556. The state court then specifically determined that the employer's "actions were not arbitrary or capricious and that 'though Hurdle argue[d] that the agency motivation was based on racial animus, maintaining a hostile work environment, and disparate treatment . . . he d[id] not sufficiently rebut the evidence that he was terminated for deficient performance.'" *Id.* The court observed that "the majority of Hurdle's Amended Complaint [in federal court] differ[ed] only in organization, not in substance, from Hurdle's brief in support of his notice of appeal to the Circuit Court." *Id.* at 557. Thus, the state court had to make the same factual determinations the federal court would have to make to resolve the employee's claims, which is what brought the federal case within the purview of *Rooker–Feldman*. *Id.* at 558–59.

The federal court concluded that, because "Hurdle merely ha[d] attempted to refashion his state claims[,] [c]onsideration of those claims [in federal court] would constitute federal review of the Circuit Court decision, a review that is constitutionally impermissible." *Id.* at 558. It reasoned:

> Both the Hearing Officer and the Circuit Court judge ultimately determined that Hurdle's poor performance evaluations and subsequent discharge were not acts of retaliation. Hurdle would have this Court essentially reopen those facts and review the accuracy of the decisions rendered by those state administrative and judicial tribunals. Hurdle's Title VII claim in Count I cannot succeed unless this Court ultimately determines that the Circuit Court and Hearing Officer were erroneous in finding that these actions were not retaliatory. A determination of that sort by a federal district court is precisely the type of appellate review that the *Rooker–Feldman* doctrine forecloses.

*Id.* at 558–59. Here, in contrast, the state court did not make any determinations regarding discrimination, and therefore a ruling in Adebusoye's favor, finding that the county discriminated against him in violation of Title VII, would not also be a ruling that the state court ruling was erroneous or otherwise improper. Therefore, it is not foreclosed by the *Rooker–Feldman* doctrine. *See id.*; *see also Lane*, 660 F. App'x at 189.

Defendant also argues that "the Fourth Circuit has held that 'even if a claim is not presented to a state court . . . a plaintiff is not entitled to bring that claim in federal court if the claim was one that should have been brought in state court.'" Def.'s Mem. 12 (quoting *Feldman*, 460 U.S. at 482 n.16; citing *Allstate Insurance Co. v. West Virginia State Bar*, 233 F.3d 813, 819 (4th Cir. 2000); *Guess v. Board of Medical Examiners of the State of South Carolina*, 967 F.2d 998, 1003 (4th Cir. 1992)). Although the Fourth Circuit has observed that *Feldman* does more than "prevent[] [federal courts] from reviewing issues actually decided by state courts," its scope is not as broad as the County suggests. *Allstate Ins. Co. v. W. Virginia State Bar*, 233 F.3d 813, 818–19 (4th Cir. 2000). Rather, it

> denies [federal courts] jurisdiction over federal claims that are inextricably intertwined with state court decisions. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303; *Breckenridge,* 211 F.3d at 198. A "federal claim is inextricably intertwined with the state-court judgment *if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it*." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (Marshall, J., concurring).

*Id.* (emphasis added). Here, the federal discrimination claim is not "inextricably intertwined with the state-court judgment." *See id.* The state court simply decided that the sanction of termination was timely. Finding that Adebusoye's termination was discriminatory does not mean that it also was timely or that it was not an appropriate sanction for his use of excessive force. Thus, a federal court judgment in Adebusoye's favor will not be a conclusion that "the state court wrongly decided

the issues before it." *See id.* The *Rooker–Feldman* doctrine does not bar this Court's review of Adebusoye's discrimination claim.

## **Collateral Estoppel**

Collateral estoppel is "based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised . . . ." *Grady Mgmt., Inc. v. Epps*, 98 A.3d 457, 472 (Md. Ct. Spec. App. 2014) (citation omitted).[6] The doctrine bars relitigation of an issue if a defendant demonstrates that (1) there was "a final judgment on the merits in the prior litigation"; (2) "the party against whom the plea is asserted" was "a party or in privity with the party in the prior adjudication"; (3) "the issue decided in the prior litigation [is] identical with the issue presented in the subsequent litigation"; and (4) "the issue actually litigated [was] essential to the judgment in the prior action." *GAB Enters., Inc. v. Rocky Gorge Devel., LLC*, 108 A.3d 521, 530 (Md. Ct. Spec. App.), *cert. denied sub nom. Rocky Gorge Dev. v. GAB Enters.*, 114 A.3d 711 (Md. 2015). Here, the question is whether the issues are identical to those decided by the state court. If all issues raised in this suit are identical to the issues presented in the previous suit, then dismissal is appropriate. *E.g.*, *Graves v. OneWest Bank, FSB*, No. PWG-14-1995, 2015 WL 2452418, at *1 (D. Md. May 20, 2015).

Significantly, "the judgment in the prior action operates as an estoppel *only as to those matters in issue or points controverted*, upon the determination of which the finding or verdict was rendered." *GAB*, 108 A.3d at 530 (quoting *John Crane, Inc. v. Puller,* 899 A.2d 879, 891 (Md. Ct. Spec. App. 2006) (quoting *LeBrun v. Marcey*, 86 A.2d 512, 514 (Md. 1952) (citations and

---

[6] Maryland law regarding collateral estoppel applies because the relevant prior proceeding was in a Maryland state court, and this Court "must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

quotation marks omitted)) (emphasis in *GAB Enters.* removed; emphasis added)). Unlike *res judicata*, which bars a party from bringing any "'matter that [was] decided in the original suit,'" as well as "'all matters which with propriety could have been litigated in the first suit,'" collateral estoppel "means that if a previous case took place between the same parties or their privies, and the fact-finder made a finding that was 'essential to' the judgment entered, all future cases between those parties are stuck with *that* finding and cannot re-litigate *the question*." *Mostofi v. Midland Funding, LLC*, 117 A.3d 639, 644 (Md. Ct. Spec. App. 2015) (quoting *Lizzi v. Wash. Metro. Transit Auth.*, 862 A.2d 1017, 1022 (Md. 2004) (quoting *Alvey v. Alvey*, 171 A.2d 92, 94 (Md. 1961)); *Welsh v. Gerber Prods., Inc.*, 555 A.2d 486, 489 (Md. 1989)) (emphasis added). Thus, "'the inquiry must always be as to *the point or question actually litigated and determined* in the original action, *not what might have been thus litigated and determined*. Only upon such matters is the judgment conclusive in another action.'" *John Crane, Inc.*, 899 A.2d at 891–92 (quoting *LeBrun*, 86 A.2d at 514 (citations and quotation marks omitted)) (emphasis added; original emphasis removed).

The County notes that "[a]n issue may be collaterally estopped even if a plaintiff did not raise that *legal theory* in the prior proceeding because 'the concern of collateral estoppel law is with the preclusion of duplicative *fact-finding*.'" Def.'s Mem. 14 (quoting *John Crane, Inc.*, 889 A.2d at 894) (emphasis added). That is true with regard to legal theories. *See John Crane, Inc.*, 889 A.2d at 894. But, the County then asserts that, "[t]hus, the bar arises not only to all matters litigated, but also to all those that *could and should have been litigated*, and are therefore deemed conclusive." *Id.* (citing *Colandrea*, 761 A.2d at 910) (emphasis added). Indeed, in *Colandrea*, the Court of Appeals of Maryland said: "The judgment in the prior case has collateral estoppel effects on all issues there raised, or that should have been raised." *Colandrea*, 761 A.2d at 910.

Counsel previously raised this argument in *Butterworth v. Black,* No. PWG-15-1721, 2016 WL 4662344 (D. Md. Sept 6, 2016), where she also represented Prince George's County and where I explained:

> [I]n *Colandrea*, the Court of Appeals differentiated collateral estoppel from *res judicata*, stating clearly that, "for the doctrine of collateral estoppel to apply, the probable fact-finding that undergirds the judgment used to estop must be scrutinized to determine if the issues raised in that proceeding were *actually litigated*, or facts necessary to resolve the pertinent issues were adjudicated in that action," whereas under the doctrine of *res judicata*, "a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, *but also as to matters that could have been litigated in the original suit.*" *Id.* (first emphasis added; second emphasis in *Colandrea*). Moreover, the Court of Appeals more recently has stated that "the doctrine of collateral estoppel provides that, '"[w]hen an issue of fact or law is *actually litigated* and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."'" *Garrity v. Md. State Bd. of Plumbing*, 135 A.3d 452, 458 (Md. 2016) (quoting *Cosby v. Dep't of Human Res.,* 42 A.3d 596, 602 (Md. 2012) (quoting *Murray Int'l Freight Corp. v. Graham,* 555 A.2d 502, 504 (Md. 1989)) (emphasis added)). Therefore, under the circumstances of this case, collateral estoppel bars only the litigation of facts that the state court actually decided, and not those factual issues that could have been, but were not, raised. *See id.*

*Butterworth*, 2016 WL 4662344, at *7. The County insists that

> this Court did not deny the County's argument in *Butterworth v. Black* . . . . Instead, this Court in *Butterworth* partially granted the County's motion to dismiss on collateral estoppel grounds upon finding that the plaintiff could not challenge his use of excessive force and his termination. Here, Plaintiff seeks to directly challenge his use of excessive force and his termination. *Id.* Thus, under *Butterworth* the doctrine of collateral estoppel bars Plaintiff's state law claims on these two issues

Def.'s Reply 3. Here, also, Adebusoye is collaterally estopped from litigating facts and issues actually decided by the state court, but the scope of that limitation is much narrower than the County contends.

As in *Butterworth*, to determine what, if any, facts or issues the plaintiff cannot relitigate in this Court based on collateral estoppel, I must consider what facts Adebusoye must prove for

his one remaining claim in this Court – discrimination in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To prove a violation of this statute, Adebusoye can establish "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC,* No. JKB–10–276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.,* 375 F.3d 288, 295 (4th Cir. 2004)). Alternatively, he can offer "other circumstantial evidence [that] suggests discrimination." *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 545 (4th Cir. 2003); *Dennis v. Columbia Colleton Med. Ctr. Inc.*, 290 F. 3d 639, 648–49 n.4 (4th Cir. 2002).

In state court, counsel's argument and the state court's ruling addressed only the timeliness of the employer's imposition of the sanction of termination. *See* Hr'g Tr. When it affirmed the termination as a sanction for use of excessive force, it did not consider either "less favorable treatment than similarly situated employees outside the protected class" or any other evidence of discrimination. *See Linton*, 2011 WL 4549177, at *5; *see also Bryant,* 333 F.3d at 545. Yes, Adebusoye is collaterally estopped from litigating whether he used excessive force or whether termination was an appropriate sanction for excessive force (the state court already affirmed the County's decisions in this regard, State Ct. Docket 5) or whether the sanction was timely imposed (the state court already concluded that it was, Hr'g Tr.). But, the state court did not address whether, even if Adebusoye's use of excessive force justified his termination, the County's choice of sanction was motivated by discriminatory animus. Given the Director's discretion in choosing

17

a sanction, the current record does not preclude the possibility that, despite his use of excessive force, the County would have retained him but for his national origin. Indeed, Adebusoye alleges that the County has retained correctional officers who committed similar acts, but who were not of African origin. Thus, he can bring a claim that the termination of his employment was discriminatory.

Therefore, collateral estoppel bars nothing more than the relitigation of the facts that the state court determined: Adebusoye used excessive force, it was proper to terminate him based on that use of force, and the imposition of the sanction of termination was timely.

## **ORDER**

Accordingly, it is, this 12th day of March, 2019 hereby ORDERED that

1. The County's Motion to Dismiss, ECF No. 16, IS GRANTED IN PART AND DENIED IN PART as follows:

    a. Adebusoye failed to exhaust his retaliation claim;

    b. Adebusyoe's retaliation claim IS DISMISSED;

    c. Collateral estoppel bars the relitigation of the facts that the state court determined: Adebusoye used excessive force, it was proper to terminate him based on that use of force, and the imposition of the sanction of termination was timely; and

    d. The motion otherwise IS DENIED as to Adebusoye's discrimination claim;

2. The Clerk will update the docket to reflect the County as the only Defendant; and

3. The County's Answer is due April 2, 2019.

/S/
Paul W. Grimm
United States District Judge