IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| ADEBAYO ADEBUSOYE, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-18-0153 |
| PRINCE GEORGE'S COUNTY, MARYLAND | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Adebayo Adebusoye, through counsel, filed suit against his former employer, Prince George's County, Maryland ("the County"), alleging discrimination and retaliation based on his national origin in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000(e) *et seq.* Am. Compl. ¶¶ 25–35, ECF No. 15. The County filed a dismissal motion, which I granted in part by dismissing Plaintiff's retaliation claim for lack of subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies. Mem. Op. 2, ECF No. 21. The case proceeded with discovery on Plaintiff's claim of discrimination, and the County now seeks summary judgment. Mot., ECF No. 63. I have reviewed the filings[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). Because a genuine dispute exists as to material facts related to Plaintiff's discrimination claim, as discussed below, the Defendant's Motion for Summary Judgment is denied.

---

[1] The motion included numerous exhibits, Plaintiff filed a response in opposition, ECF No. 64, also with exhibits, and the County filed a Reply, ECF No. 65.

1

# BACKGROUND[2]

Plaintiff is a Nigerian born, American citizen who began working with the Prince George's County Department of Corrections ("DOC") on October 30, 2008 and was employed by the County through February 17, 2012, as a Correctional Officer. Am. Compl. ¶¶ 5-6, 10. Plaintiff was assigned to the medical unit and was responsible for distributing meals to the detainees housed in the unit. *Id*. ¶¶ 19-20.

On June 20, 2011, Plaintiff was distributing meals to the inmates housed in the medical unit. *Id*. ¶ 20. Plaintiff attempted to distribute a meal to Brandon Bianco ("the detainee"), who had recently been moved to the medical unit. *Id*. The detainee was housed in the medical unit for psychotic episodes and had been transferred on "suicide watch." *Id*. ¶ 22. The detainee had a history of hostile and unsafe interactions with employees at the DOC. *Id*. When Plaintiff opened the detainee's cell door, Plaintiff alleges that the detainee advanced towards him "in an aggressive manner." *Id*. ¶¶ 20–22. Plaintiff then entered the cell, and the cell door locked behind him. Mot. Ex. 1, Adebusoye Dep. 19:5–14, ECF No. 63-4. Plaintiff states that he does not recall what the detainee said or did, nor could he recall what his partner was doing. *Id*. 18:4–21:20; 41:1-43:20. Plaintiff testified that he feared for his safety and called over the radio for assistance. *Id*. at 20:9–16.

Plaintiff struck, pushed, punched, and kicked the detainee several times, and pulled him off the bunk bed, as the disturbing security camera footage ("the footage") depicts. Mot. Ex. 9, Video Tape of the Incident, ECF No. 63-13. The footage does not show the detainee ever making

---

[2] In reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Here, generally, undisputed facts comprise the background. Where a dispute exists, I consider the facts in the light most favorable to Plaintiff. *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480. For a more comprehensive recitation of the facts, please refer to my March 12, 2019 Memorandum Opinion, ECF No. 21.

any physical contact with the Plaintiff. *Id*. Rather, the footage shows the detainee lying on the floor of his cell trying to defend himself and curled up in the fetal position. *Id*. Several other officers responded to the incident. Mot. Ex. 1, 23:9-10; 25:8-11; Mot. Mem. 6, ECF No. 63-1. One of the officers, Lt. Avery Johnson, worked in the medical unit, and after the incident was over, he noted that the detainee suffered from bruises. Mot. Mem. 6. As a result of the incident, Plaintiff was charged with excessive force and faced termination.

All DOC employees facing termination are given an option of proceeding to an Administrative Hearing or accepting the proposed sanction. Mot. Ex. 3, McDonough Dep. 20:1–14, ECF No. 63-6. At Plaintiff's hearing, the Administrative Hearing Board ("AHB") found Plaintiff guilty as charged and recommended sanctions including (1) a demotion in rank and pay, and (2) a suspension without pay. Mot. Ex. 3.33, Recommendation and Report of the AHB, Feb. 8, 2012. The AHB's recommendation was subject to the approval of Director Mary Lou McDonough. McDonough Dep. 50:11-51:7. Director McDonough subsequently rejected the AHB's recommendation and imposed a sanction of termination, effective February 17, 2021, because the inmate was injured and required medical treatment due to being punched and kicked more than 27 times, yanked out of his bunk bed, and thrown on the floor. *Id.* at 52:1–55:21; 63:14–65:22, 165:14–19; Mot. Ex. 3.5, Final Notice of Disciplinary Action, Feb. 16, 2012. Director McDonough believed Plaintiff never showed any remorse, nor did he admit any wrongdoing or fault for his actions, and any verbal threats made towards Correctional Officers does not justify taking physical action against inmates. *Id*. This sanction was imposed in accordance with Subtitle 16 of the Prince George's County Code, and in accordance with DOC Policies and Procedures. *Id.* at 26:1– 27:27:22; Mot. Ex. 3.1, Subtitle 16 of the PGCC; Mot. Ex. 3.2, DOC Policies and Procedures, Discipline.

Plaintiff filed an appeal to the Circuit Court for Prince George's County on February 28, 2012. Mot. Ex. 6, Docket Report for CAL 12-06148, ECF No. 63-9. The Circuit Court for Prince George's County affirmed the decision of the Director and upheld Plaintiff's termination on August 29, 2012. *Id*. Although Plaintiff appealed the decision of the Circuit Court to the Court of Special Appeals, that appeal was voluntarily dismissed by the Plaintiff, and no action is currently pending in any of the state courts. *Id*.

On or about February 21, 2012, the Plaintiff completed an Intake Questionnaire to pursue a charge alleging discrimination based on national origin before the Equal Employment Opportunity Commission ("EEOC"). Am. Compl. ¶ 12. On or about February 22, 2012, the Plaintiff signed a formal charge generated by the EEOC, summarizing the Plaintiff's allegations, and charging the Defendant with discriminating against the Plaintiff based on national origin. *Id*. at ¶ 13. On June 29, 2017, the EEOC issued a Letter of Determination upon finding that the County violated Title VII based on Plaintiff's discriminatory discipline claim. *Id*. In its letter, the EEOC only noted that one comparator, Donald West, may have been treated more favorably than the Plaintiff. *Id*. On or about November 24, 2017, the EEOC issued a Notice of Right to Sue regarding Plaintiff's Charge of Discrimination. *Id*. at ¶ 16.

Donald West is an African American male. Mot. Ex. 3.7, Comparator Chart Submitted to the EEOC. Donald West was charged with excessive force for punching an inmate one time, and a recommendation was made for his demotion. Mot. Ex. 3.8, Initial Notice of Conduct Related Disciplinary Action, West. West did not proceed to a hearing because he accepted summary punishment, and thus, that was his final disciplinary action. Mot. Ex. 3, McDonough Dep. 68:10–16; 71:11–72:20; 209:1–21.  Plaintiff's comparators also included Jermaine Gordon, Corey

4

Yancey, both African American males, and Richard Lehnan, a Caucasian male. Mot. Ex. 3.7, Comparator Chart.

Defendant includes another comparator, Timothy Olupona, as someone noted by Plaintiff after his Charge of Discrimination was filed with the EEOC. Olupona was of Nigerian descent, like the Plaintiff and had several allegations of excessive force lodged against him. Mot. Ex. 3.20, Initial Notice of Conduct Related Disciplinary Action, Olupona, Aug. 23, 2014; Mot. Ex. 3.22, Final Notice of Conduct Related Disciplinary Action, Olupona; Mot. Ex. 3.21, Initial Notice of Conduct Related Disciplinary Action, Olupona, Feb. 3, 2014; Mot. Ex. 3.23, Final Notice of Conduct Related Disciplinary Action, Olupona; Mot. Ex. 3.24, Amended Initial Notice of Conduct Related Disciplinary Action, Olupona; Mot. Ex. 3.25, Final Notice of Conduct Related Disciplinary Action, Olupona. Olupona was not terminated since he retired from County service and accepted responsibility for his actions. Mot. Mem. 18; McDonough Dep., 166:1–11. Plaintiff asserts that he did not cite Olupona as a comparator because Olupona is African-born and within the same protected class. Resp. 8. But Plaintiff contends that there are an additional nine comparators that were less severely disciplined. *Id.* at 8-10.

This case was filed on January 17, 2018. Compl., ECF No. 1. In this action, Plaintiff asserted employment discrimination by the County and retaliation for bringing a claim. *Id.* After a status conference with the parties, I granted Plaintiff's leave to file an Amended Complaint, and it was filed on April 11, 2018. *See* ECF Nos. 14, 15. In Count I of the Amended Complaint, Plaintiff alleged a claim for disparate treatment based on national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e) *et seq*. Am. Compl. ¶¶ 25–35. In Count II of the Amended Complaint, Plaintiff alleged a claim for retaliation in violation of Title VII. *Id.* ¶¶ 36–45.

The County filed a Motion to Dismiss, and I issued a Memorandum Opinion and Order dismissing Count II of Plaintiff's Amended Complaint. ECF No. 21. I noted that Plaintiff's termination was lawfully based on his use of excessive force. *Id*. at 18. However, I left open the question of whether the sanction of termination imposed on Plaintiff was motivated by discriminatory animus, while other correctional officers outside his protected class who committed similar acts were retained. *Id*. The County's Motion for Summary Judgment, ECF No. 63, is now ripe for decision.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides for judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact

6

exists. *Anderson*, 477 U.S. at 256. A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.*

## DISCUSSION

### I.   Prima Facie Case of Discrimination Based on National Origin

The Plaintiff bears the initial burden of proving a *prima facie* case of discrimination by raising an inference that the employer acted with unlawful discriminatory intent prohibited by Title VII. *Wileman v. Frank*, 979 F.2d 30, 33 (4th Cir. 1992). In order to support a claim of "discriminatory discipline," a Plaintiff must make a *prima facie* showing that he or she: (1) is a member of a protected class, (2) engaged in prohibited conduct comparable in seriousness to that of employees not belonging to the protected class, and (3) that the disciplinary measures taken against the plaintiff were more severe than those enforced against the other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).

Once the plaintiff establishes a *prima facie* case, the case proceeds through the burden-shifting framework. To state a disparate treatment claim, a plaintiff lacking direct evidence of discrimination may proceed under *the McDonnell Douglas* proof scheme. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Plaintiff must first establish a "*prima facie* case" of discrimination or retaliation, by a preponderance of the evidence. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). The precise formulation of the required *prima facie* showing will vary in "different factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13.

Here, Plaintiff can certainly establish the first element of a *prima facie* case—that he is a member of a protected class under Title VII, which prohibits discrimination based on "race, color, religion, sex, or national origin"—because he is a Nigerian-born individual. *See* 42 U.S.C. §

7

2000e-2(a)(1); Am. Compl. ¶ 5. Both parties recognize and agree that this element has been met. Mot. Mem. 16; Resp. Mem. 16, ECF No. 64-1.

The parties disagree about whether Plaintiff meets the requirements of prongs two and three of a *prima facie* case. *Id*. Defendant argues that Plaintiff's claim fails as a matter of law because Plaintiff cannot establish that his comparators were treated more favorably than the Plaintiff nor that harsher penalties were imposed on the Plaintiff. Mot. Mem. 17. Defendant asserts that the actions of the comparators noted by the Plaintiff in this case pale in comparison to those of the Plaintiff as his actions were far more egregious than his comparators. *Id*. at 17. And Defendant contends that the circumstances surrounding the punishments are different, because the comparators mitigated the consequences of their charged misconduct by admitting to their actions, accepting summary punishment, and not pursuing hearings before the AHB. *Id*.

With regard to the second prong, "to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). The Fourth Circuit has "emphasized that a comparison between similar employees 'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances.'" *Id*. at 223 (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)).

Plaintiff introduced evidence of comparators who were correctional officers outside of his protected class and were found guilty of excessive force and/or unnecessary use of force. Defendant argues that the conduct was not comparable in seriousness. But Defendant's argument

that Plaintiff's actions were more egregious and paled in comparison to the actions of others in a similar situation proves too much at this procedural posture of the case, as it raises a question of material fact. Defendant does not articulate any objective means of measuring the degree of "egregiousness" that could be used to evaluate comparators under the circumstances of this case—where they all committed conduct that could be regarded as egregious, inasmuch as it involved the use of excessive force against detainees. Rather, it appears that the County is applying its subjective assessment of Plaintiff's conduct to distinguish it from that of his comparators. As Plaintiff argued, seriousness of the misconduct may also be judged by the justification for the use of force and the injuries caused. Resp. 17-18. For example, West punched an inmate simply because he did not hang up the telephone, and the inmate's jaw was broken in two places, requiring surgery. In comparison, Defendant acknowledged that Plaintiff was justified in the use of force, and the inmate's injuries were minor. Potential jurors may disagree with Defendant that the comparator's conduct—which the County also deemed to be excessive force—was less serious than Plaintiff's.

The third prong of establishing a *prima facie* case is met by Plaintiff's showing that the disciplinary measures taken against him were more severe than those enforced against the other employees that he introduced as comparators. Plaintiff describes several individuals who were charged with excessive force, found guilty by the DOC, and received less severe discipline. Resp. 8-10.

It is for the jury to resolve disputes of material fact. Here, a reasonable jury could find that Plaintiff met the burden of establishing a *prima facie* case of discrimination based on the evidence of comparators who were also found guilty of using excessive force but were less severely punished.

## II.     Legitimate Non-discriminatory Reason for the Actions Taken

When a Plaintiff establishes a *prima facie* case, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to articulate a legitimate, non-discriminatory reason for its adverse employment action. *See Hoyle v. Freightliner*, *LLC*, 650 F.3d 321, 336 (4th Cir. 2011) (citing *Cook*, 988 F.3d at 511). "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).

The Defendant again argues that they terminated Plaintiff's employment due to the egregious nature of his actions dealing with an inmate, and his failure to display remorse and accept accountability for his actions. Mot. Mem. 16. Defendant asserts that Plaintiff's actions were considerably "more egregious" than those of his comparators. *Id*.

While the County correctly notes that the video images of Plaintiff's interaction with the detainee that were captured by the security camera footage provided a legitimate basis for initiating a misconduct inquiry, that is not the determinative factor in whether summary judgment should be granted.  Plaintiff does not challenge the *bona fides* of the misconduct investigation, or even the conclusions that he committed misconduct. Rather, he challenges the ultimate decision of the County to overrule the recommendation of the AHB with regard to the level of discipline that Plaintiff deserved. It is the motivation for that ultimate decision, which turns on whether or not it was the product of national origin discrimination that governs whether summary judgment is appropriate at this stage of the litigation.  And, as noted, that decision turns on whether the jury agrees with the County that Plaintiff's actions were more serious than his comparators. The Court

10

has been supplied with only two other instances of excessive force caught on video, and Plaintiff has supplied multiple examples of comparators where video was not provided. Considering Plaintiff's evidence in the light most favorable to him, I cannot agree with Defendant that the facts are undisputed simply because Plaintiff's act was captured on video. *See* Mot. Mem. 20-21. However, the County has articulated an additional non-discriminatory reason for the termination in addition to the egregious nature of Plaintiff's actions—that he failed to display remorse and accept responsibility for his actions, unlike his comparators. This is sufficient to raise a jury question regarding Defendant's reasons for the termination.

### III. Pretext

If the defendant meets its burden of proving that legitimate non-discriminatory reasons exist for the actions taken, the plaintiff must then show that the employer's stated reason was merely a pretext for discrimination. *Burdine*, 450 U.S. at 253; *Merritt*, 601 F.3d at 294. "[A] plaintiff demonstrates pretext by showing that the employer's proffered nondiscriminatory reason [for the plaintiff's termination] is a lie and the real reason is based on discriminatory intent." *Smith v. Vilsack*, 832 F. Supp. 2d 573, 584 (D. Md. 2011) (quoting *Hobbs v. City of Chi.*, 573 F.3d 454, 462 (7th Cir. 2009)); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998).

Courts have recognized that the changing of or supplying inconsistent explanations for termination is evidence of pretext. *See Haynes*, 922 F.3d at 226 (citing *EEOC v. Sears Roebuck and Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001) ("Indeed, the fact that [defendant] has offered different justifications at different times for its failure to hire [plaintiff] is, in and of itself, probative of pretext.")).

Here, when Plaintiff was terminated, the reason given was that his misconduct may affect the general public's confidence and trust in the operation of the Department of Corrections. Mot.

11

Ex. 3.5, Final Notice of Disciplinary Action.  However, in Defendant's position statement to the EEOC, the reason provided was "insubordination/disruption/misconduct." Mot. Ex. 2.5, DOC Ltr. Re EEOC Charge, ECF No. 63-5. In its interrogatory answers, the County stated that "the events in question captured on the video tape were so unjustifiable and so egregious that the penalty was increased." Resp. Ex. 3 ¶ 7, ECF 64-3. Finally, during McDonough's deposition and in its motion, the County asserted that Plaintiff was terminated because he did not show remorse. Mot. Mem. 22; Mot. Ex. 3, McDonough Dep. 52:16-53:8.  A reasonable juror could infer that the inconsistent explanations were pretextual and the County's disciplinary decision was discriminatory.  Plaintiff also provided an affidavit from a co-worker at the County stating that foreign-born correctional officers were more likely to face disciplinary actions than their American-born counterparts. Resp. Ex. E, ECF No. 64-6.  If deemed admissible and credible, this evidence could provide weight towards a finding that Defendant's purported reasons were pretextual.

## CONCLUSION

For the foregoing reasons, there remain material questions of fact that must be decided by a jury.  Thus, summary judgment is not appropriate, and the discrimination claim survives. Defendant's Motion for Summary Judgment, ECF No. 63, is DENIED.  By separate Order, I shall schedule a telephone conference with the parties to discuss trial proceedings.

SO ORDERED, this 2nd day of December 2021.

/S/
Paul W. Grimm
United States District Judge
